James L. Meldon v. Commissioner.
Meldon v. Commissioner
Docket No. 30427.
United States Tax Court
T.C. Memo 1954-120; 1954 Tax Ct. Memo LEXIS 124; 13 T.C.M. (CCH) 765; T.C.M. (RIA) 54226; August 12, 1954, Filed *124 Enoch C. Filer, Esq., 1005 Ariel Building, Erie, Pa., for the petitioner. Fortescue W. Hopkins, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax for the years 1945 and 1946 and a fraud penalty for 1945 as follows: Year
Income Tax
Penalty
1945
$203,878.04
$101,939.02
1946
7,911.37
The issues presented are: 1. Whether the conceded amount of $226,961.54 received by petitioner in 1945 in connection with a transaction relating to the stock of the Erie Casket Company is taxable as ordinary income or as short-term capital gain, as contended by the respondent, or as long-term capital gain, as contended by petitioner; 2. Whether the petitioner realized short-term capital gains of $1,798.66 in 1945 in excess of the amount of $5,130.54 reported for that year, exclusive of the Erie Casket Company stock transaction; 3. Whether the taxable portion of the petitioner's long-term capital gains was $1,030,09 or $304.63 in excess of the amount reported in that year; 4. Whether the petitioner received interest income of $6,870.08 during 1945, no portion of which was reported *125 in his return for that year; 5. Whether the petitioner realized a net short-term capital gain of $1,437.95 in 1946 instead of a net short-term capital loss of $11,695.39, as claimed in his return for that year; 6. Whether the petitioner received interest income during 1946 of $2,256.03 in excess of the amount reported on his return for that year; 7. Whether the amount of $111,250 reported by the petitioner in 1946, as the taxable portion of the alleged long-term capital gain in connection with the Erie Casket Company stock transaction involved in issue 1, supra, should be eliminated in determining the petitioner's taxable income for 1946; and, 8. Whether the petitioner is liable for the 50 per cent addition to the tax for fraud in the taxable year 1945. Findings of Fact The stipulated facts are found accordingly. The petitioner resides in Erie, Pennsylvania. His individual returns for the periods involved were filed with the collector of internal revenue for the twenty-third district of Pennsylvania. Petitioner was employed by the Bureau of Internal Revenue from 1918 to 1924. He was originally employed as a deputy collector, then as an agent, and later as Assistant *126 Internal Revenue Agent in Charge at Pittsburgh, Pennsylvania. During the period 1924 to 1945 he had a substantial accounting practice in Erie, Pennsylvania. He filed between 50 and 60 individual returns, and from 10 to 15 corporation income tax returns, annually, and has represented taxpayers before the Bureau of Internal Revenue. The Erie Casket Company is a Pennsylvania corporation. It had 1,675 shares of capital stock outstanding. Joseph H. Pattan was president and owner of 850 shares and controlled the disposition of the remaining shares, all of which were owned by the members of his family. From 1924 until May, 1946, petitioner was employed by Pattan to make monthly financial statements and to prepare the income tax returns for the Erie Casket Company, as well as the income tax returns for Pattan and his family. In the summer of 1944 Pattan mentioned to petitioner that he might be interested in selling the stock of the Erie Casket Company. Later, in August or September, the petitioner inquired if Pattan would entertain a proposition from him to purchase the business and Pattan suggested that petitioner submit a proposition. On October 5, 1944, the petitioner submitted a *127 proposition in writing which was not accepted, and considerable discussion and negotiation ensued between the petitioner, Pattan, and Pattan's attorney. Two or three drafts of a proposed agreement were prepared by the attorney which were unacceptable. On January 30, 1945, the attorney prepared an agreement bearing the date January 31, 1945, which was executed by Joseph H. Pattan, Lotta L. Pattan, G. Jane Pattan, and Betty P. Claus, parties of the first part, and James L. Meldon, party of the second part. After certain recitals the agreement reads as follows: "NOW, THEREFORE, in consideration of the premises and of the mutual convenants [convenances] and payments hereinafter agreed to be made and performed by the parties hereto, it is agreed: "(1) Parties of the first part will sell to the party of the second part, and the party of the second part will purchase from the parties of the first part, all of the capital stock, consisting of 1675 shares, of Erie Casket Company, for the sum or price of Five Hundred Thousand ($500,000.00) Dollars, in addition to which second party will assume and pay any and all taxes that may be assessed against first parties by reason or on account *128 of said sale or in any way arising out of or attributable to said transfer or sale. "(2) Second party will pay, upon the execution of this agreement, One Hundred Fifteen Thousand ($115,000.00) Dollars on account of said purchase price by the delivery to first parties of One Hundred Fifteen Thousand ($115,000.00) Dollars par value of United States Government Bonds, and will make, execute and deliver to Joseph H. Pattan for parties of the first part his promissory note for Three Hundred Eighty-Five Thousand ($385,000.00) Dollars payable on or before three (3) years from date, with the privilege of paying Twenty Thousand ($20,000.00) Dollars or more at any time, said note to bear interest at the rate of two and one-half (2 1/2%) per cent. per annum. "(3) The shares of stock aforesaid shall remain the property of first parties until fully paid for, and second party shall acquire no proportionate or equitable interest in said stock by reason of any payments made on account of said purchase price. "(4) Upon the payment of said purchase price of Five Hundred Thousand ($500,000.00) Dollars in full within three (3) years from the date hereof, and when in addition first parties shall be *129 furnished with evidence satisfactory to them of the assumption and payment by second party of all taxes or other liabilities which may be assessed against or accrue to first parties by reason of such sale of stock or which may be in any way attributable to such transfer or sale, first parties will then transfer and deliver to second party or to his nominee or nominees the said 1675 shares of the capital stock of the said Erie Casket Company. "(5) Advancements heretofore made to Joseph H. Pattan in the amount of One Hundred Seventy Thousand ($170,000.00) Dollars or thereabouts shall be retained by him; and the property known as the Burnham Lumber Company Property, now carried on the books of the Erie Casket Company, shall be retained by the said Joseph H. Pattan, and if necessary to confirm the title thereto in him, shall be transferred or conveyed to the said Joseph H. Pattan; and any policy or policies of life insurance now carried by the Erie Casket Company upon the life of Joseph H. Pattan shall be properly assigned to the said Joseph H. Pattan or to such person or persons as he shall designate; and any tax liability which may accrue to or be assessed against the said Joseph H. *130 Pattan or for which he may become in any way liable by reason of the retention of said advancements or of said property or insurance policies or the transfer thereof to him, shall be assumed and paid by second party, and satisfactory evidence of such assumption and payment shall be furnished to first parties before the transfer to second party of any of said stock. "(6) It is not the intention of the parties hereto that dividends shall be paid upon said stock during the period prior to its sale and transfer to party of the second part. "(7) This agreement shall be binding upon the executors or administrators of the parties of the first part or any of them. In case of the death of the said party of the second part prior to the payment of the said sum of Five Hundred Thousand [500,000.00) Dollars and the completion of the undertakings herein agreed to be done, kept and performed by him, said parties of the first part will repay any sum or sums paid by the said party of the second part on account of said purchase price, without interest, and all rights of the several parties, hereto in this contract shall cease and be determined. In case of the death as aforesaid of second party, *131 no rights or interest in this contract shall survive to his estate or to his administrator or executor or next of kin. The rights and interest of party of the second part in this contract shall not be assignable." Prior to the execution of the agreement petitioner delivered to Pattan, as evidence of good faith, $107,000 face value United States Government bonds, which Pattan deposited in his safe deposit valult pending completion of the negotiations and the execution of an agreement. Of the total bonds delivered $27,000 were owned by Evelyn K. Meldon, wife of the petitioner, and $10,000 by their children. On January 31, 1945, Meldon delivered to Pattan his promissory note for $385,000, and on February 1, 1945, a check for $8,000, which, together with the $107,000 of bonds, provided the $115,000 down payment as required by the agreement. In June 1945 Everett C. Walker submitted a proposal to Pattan to purchase the Erie Casket Company. The proposal was more attractive to Pattan than the agreement with petitioner. Pattan and the petitioner discussed the matter with the result that on June 25, 1945, petitioner delivered to Pattan his copy of the contract of January 31, 1945, and *132 other papers in connection with that contract, and received in return his original $107,000 face value United States Government bonds, an additional $230,500 face value United States Government bonds, his note for $385,000, and a release of his obligation to pay Pattan's federal taxes in the amount of $162,500. In his individual income tax return for 1945 the petitioner did not report any gain as a result of the transaction with Pattan involving the capital stock of the Erie Casket Company. In his return for 1946 Meldon reported the transaction with respect to the Erie Casket stock, as follows: Sales of
capital
assets
Date purchased
Date sold
Sale price
Cost
Gain
Erie Casket Co.
1-4-45
1-18-46
$722,500
$500,000
$222,500
The petitioner included in income for 1946 as a long-term capital gain taxable at 50 per cent the amount of $111,250. The fiscal year of the Erie Casket Company ended June 30. The general journal of the Erie Casket Company shows the following entry during the month of June 1945: Accounts payable
General ledger
ledger
Acct. No.
Charges
Credits
Charges
Credits
Accounting fees
380
$8,000
Accounts payable -
205
Trade
Invoice 6-30-45 - James
L.
Meldon Co.
$8,000
*133 In September 1945 petitioner advised Pattan that he would like to be paid for services rendered the Erie Casket Company. Pattan requested that Meldon submit an invoice. The following invoice was presented: "JAMES L. MELDON CO. Accountants & Auditors 607 Ariel Building Erie, Pa.
November 30, 1945 "Erie Casket Company 154 West 20th St. Erie, Pennsylvania
"To Services Rendered: "Part time November, December, and entire time months of January 1945 to June 1945 inclusive. Making a detailed audit for the years 1942-1943-1944-1945 and filing claim for Federal Tax Refund. "Installing New Accounting Records, preparing cost data on each style of casket mfg'd. filing data on O.P.A. for new pricing and miscellaneous work. $8,000" On January 17, 1946, a check payable to the order of James L. Meldon Company in the face amount of $8,000, signed by the Erie Casket Company, J. H. Pattan, treasurer, per A. N. Pattan, was delivered to Meldon. Meldon did not report the $8,000 as salary in his return for 1946. Petitioner prepared the income tax return of Pattan filed for the year 1945 and reflected therein neither Pattan's transaction with himself nor with Walker. Petitioner's excuse *134 for his failure to report the transactions in Pattan's return for 1945 was that Pattan had not received cash or bonds in excess of his cost basis as increased by the payment of $222,500 made to petitioner in 1945. Petitioner prepared a statement on July 6, 1945, disclosing Pattan's possible tax liability, wherein he calculated that Pattan had realized a gain aggregating $193,262.98 as a result of the two transactions with petitioner and Walker. Pattan engaged another accountant and an amended return for the year 1945 was filed in December 1946. The petitioner had knowledge of the filing of Pattan's amended return. In his income tax return for 1945 petitioner discloses extensive schedules of business operations and deductions, including a schedule reporting seven separate sales of stock acquired after June 29, 1945, and sold prior to December 31, 1945, for a total sales price of $86,085.41. On March 15, 1946, petitioner filed a declaration of estimated tax wherein he stated that his estimated tax liability for 1946 was $4,895.91. On September 13, 1946, the petitioner filed a revised declaration of estimated tax in the amount of $4,590.65 for the year 1946. On January 15, 1947, the *135 petitioner filed an amended declaration of estimated tax in the amount of $69,176.66 for the year 1946. The reason given by petitioner for his failure to correctly estimate his tax liability for 1946 was that "I was not at all responsible for my actions during the latter part of 1945 and practically all of 1946 and certainly not for a long time in 1947." During the taxable year 1945 the petitioner realized a short-term capital gain of $226,961.54 on the surrender and cancellation of his contract of January 31, 1945, for the purchase of the 1,675 shares of capital stock of the Erie Casket Company. During the taxable year 1945 the petitioner realized short-term capital gains of $6,418.07 from the sale of capital assets other than the transaction involving the stock of the Erie Casket Company. During the taxable year 1945 petitioner had long-term capital gains of $304.63 in excess of the amount of $725.46 reported for that year. During the taxable year 1945 the petitioner received taxable interest income from United States Government bonds in the amount of $5,966.01, no part of which was reported by the petitioner in his income tax return filed for that year. The petitioner *136 realized a net short-term capital gain of $1,437.95 for the taxable year 1946 instead of a net short-term capital loss of $11,695.39 reported for that year. During the taxable year 1946 the petitioner received interest income of $7,522.97, understating the amount of income reported for that year of $5,916.94 by the amount of $1,606.03. A part of the deficiency for the taxable year 1945 is due to fraud with intent to evade tax. Opinion LEMIRE, Judge: The first question presented involves the treatment for purposes of taxation of the conceded amount of $226,961.54 which petitioner received in the taxable year 1945. The petitioner contends that the amount is taxable as a long-term capital gain. The respondent contends it is taxable in full as ordinary income or, in the alternative, as a short-term capital gain. The amount in question represents the profit received by the petitioner for the cancellation and surrender of his contract to purchase all of the outstanding shares of capital stock of the Erie Casket Company. We find no merit in the respondent's contention that petitioner had a mere option and that the consideration was paid for a release of the seller's obligation to *137 deliver the stock when the full purchase price was paid, and hence the amount received was ordinary income. We are of the opinion that petitioner's contract with the owners of the stock was a capital asset and that the profit realized is capital gain taxable at the appropriate rate, either as a long-term or a short-term capital gain, depending upon the holding period. There is no dispute that the petitioner received the conceded amount on June 25, 1945, so that the controversy narrows to the question as to when the parties became bound by the agreement of purchase and sale. The written agreement which is set forth in our findings was executed by the parties on January 31, 1945. The respondent argues that the written agreement is the only final and binding agreement between the parties. If that be so, it is clear that the holding period is less than six months. The petitioner contends that the written agreement was merely a memorial to an oral agreement which became binding on the parties on December 14, 1944, when the petitioner claims he made a payment of $107,000, and hence his holding period was in excess of six months. Assuming for purposes of argument only that petitioner *138 made a delivery of bonds of the par value of $107,000 prior to the execution of the written agreement on January 31, 1945, we think this record clearly shows that there was no meeting of the minds of the parties until the final execution of the written agreement. The testimony of the attorney who prepared the final agreement is to the effect that he had various conferences with the petitioner and Pattan; that he made two or three drafts of an agreement which were unacceptable; and that on January 30, 1945, he prepared the agreement which the parties executed under date of January 31, 1945. His testimony was supported by his office records showing the dates on which he had conferences with the parties and the date when the final agreement was drafted. Pattan's testimony is to the same effect. He testified that he and the petitioner had many discussions, but there was no definite agreement between them until the final written agreement of January 31, 1945. A written agreement merges all previous negotiations and is presumed in law to express the final understanding of the parties. . Upon the basis of this record we are of the *139 opinion that it was the real intention of the parties that the written agreement was to constitute the sole evidence of their contract. We hold that there was no final and binding agreement between the petitioner and Pattan for the purchase and sale of the stock of the Erie Casket Company until the execution of the agreement of January 31, 1945. Therefore, the petitioner's holding period was less than six months and the gain realized in the amount of $226,961.54 is taxable as a short-term capital gain in the year 1945. The second question presented involves the amount of the petitioner's short-term capital gain realized in 1945, exclusive of the gain realized on the transaction involving the stock of the Erie Casket Company. In his deficiency notice for the year 1945 the respondent increased the amount of short-term capital gains of $5,130.54 reported by the petitioner, exclusive of the gain on the Erie stock, by the sum of $1,798.66. The petitioner contends that $511.13 of the increased gain is the amount of short-term capital gain realized by his wife, Evelyn K. Meldon, on the sale of certain United States Government bonds owned by her. The petitioner has offered no evidence *140 with respect to the remaining balance of $1,287.53 included in the increased amount determined by the respondent. On brief, the petitioner makes no argument with respect to the amount of $1,287.53, and we assume that he has abandoned any contention that the inclusion of the latter amount was erroneous. In connection with the amount of $511.13 gain on the sale of United States Government bonds, the petitioner testified that his wife was the owner of $27,000 par value of bonds which he borrowed and used to make the down payment of $107,000 on the contract of January 31, 1945, for the purchase of the Erie stock. There is no evidence in the record as to when or how the petitioner's wife acquired the bonds. The income tax return of Evelyn K. Meldon for the year 1945, which is in evidence, discloses that she did not report any sale of United States Government bonds or any interest income therefrom. Her income tax return for 1946 reports interest income from United States Government bonds in the amount of $1,000. The record also shows that she sold $40,000 United States Government bonds in 1947 and so reported on her 1947 return. There is no identification of the bonds involved, and the *141 evidence pertaining to them is inadequate and confusing. The respondent argues that the bonds in question were the property of the petitioner and that the gain from the sale in 1945 was properly included in petitioner's gross income. We would be inclined to agree with the respondent were it not for the fact that the record shows that the $511.13 capital gain in controversy was included by the respondent in a deficiency determined against Evelyn K. Meldon for 1945. The respondent also included in his deficiency against Evelyn K. Meldon for 1945 the amount of $904.07 interest income on these bonds. The deficiency determined against Evelyn K. Meldon for 1945 has been paid. In the light of these disclosures we have found as a fact that Evelyn K. Meldon was the owner of $27,000 of United States Government bonds. We hold that the respondent erred in including the amount of $511.13 as a short-term capital gain from the sale of United States Government bonds in petitioner's gross income for 1945. We have further found as a fact that petitioner received net short-term capital gains of $6,418.07 in the taxable year 1945. This amount is $1,287.53 in excess of the amount of $5,130.54 reported *142 by the petitioner as short-term capital gains in 1945, exclusive of the gain realized from the transaction involving the Erie stock. The third question presented is whether the petitioner realized long-term capital gains in 1945 of $304.63 in excess of the amount of $725.46 reported on his return for that year. The petitioner offered no evidence with respect to this assignment of error and presents no argument on brief, and, hence, the issue is deemed to have been abandoned by the petitioner. The fourth question presented is whether the petitioner received interest income of $6,870.08 in 1945, no portion of which was reported in his return for that year. The petitioner contends that the sum of $904.07 is included in interest income for 1945 from United States Government bonds belonging to his wife, Evelyn K. Meldon. As heretofore stated in connection with issue 2, the respondent determined a deficiency against Evelyn K. Meldon in 1945. He included as interest income the amount of $904.07 and the deficiency as determined was paid. Our discussion under issue 2, with respect to the short-term capital gain item of $511.13, applies equally to the interest income of $904.07 and *143 need not be repeated. Accordingly, we hold that the respondent erred in including in the petitioner's income for 1945 the amount of $904.07 as interest income on which his wife has paid the tax. The petitioner has offered no evidence as to the remaining amount of interest income included by the respondent in determining his deficiency. We, therefore, have found as a fact that the petitioner received interest income during 1945 in the amount of $5,966.01, no part of which was reported on his return filed for that year. The fifth question presented is whether the petitioner reali0ed a net short-term capital gain of $1,437.95 for the taxable year 1946 instead of a net short-term capital loss of $11,695.39, as reported on his return filed for that year. The petitioner has offered no evidence and makes no argument on brief with respect to this assignment of error. Therefore, it is presumed that the petitioner has abandoned this issue and the respondent's determination is sustained. The sixth question presented is whether the petitioner received interest income of $2,256.03 in 1946 in excess of the amount of $5,916.94 reported for that year. The only assignment of error set *144 forth in the petition with respect to the increase in interest income for 1946 is that the respondent erred in taxing to petitioner the sum of $650, representing interest on United States Government bonds belonging to his wife, Evelyn K. Meldon. The record discloses that on her 1946 income tax return Evelyn K. Meldon reported interest income of $1,000. Due to other adjustments the respondent determined a deficiency against her in the amount of $376.96, which was paid. Since it appears that a portion of the increase in interest income which the respondent has determined was received by the petitioner includes interest income on United States Government bonds owned by Evelyn K. Meldon, and presumably covers interest income from bonds reported by her in 1946, we have found as a fact that the petitioner received interest income in 1946 of $7,522.97, or $1,606.03 in excess of the amount reported by him for that year. We, therefore, hold that the respondent erred in increasing the interest income of the petitioner for the year 1946 by the amount of $650, representing interest income on bonds owned by his wife which she reported and paid the tax thereon. Otherwise, the respondent's determination *145 as to the amount of interest income received by the petitioner in 1946 is sustained. The seventh question involves the amount of $111,250 which the petitioner reported in 1946 as the taxable portion of the alleged long-term capital gain in connection with the transaction involving the capital stock of the Erie Casket Company, discussed under issue 1. In determining the deficiency against the petitioner for 1946 the long-term capital gain of $111,250 reported by the petitioner was not excluded by the respondent, although in the deficiency for 1945 he had included the gain from the Erie stock transaction as taxable in 1945. At the trial the petitioner conceded that the gain should have been returned in 1945 rather than in the year 1946. The respondent, on brief, concedes that the amount of $111,250 should be eliminated in determining the petitioner's taxable income for the year 1946. Effect will be given to the respondent's concession under the Rule 50 computation. The final question presented is whether for the taxable year 1945 the respondent's imposition of the 50 per cent addition to the tax for fraud should be sustained. The petitioner concedes that he received a taxable *146 gain of $226,961.54 from the cancellation of his agreement to purchase the capital stock of the Erie Casket Company in 1945, which was not reported on his return for that year, nor was there any disclosure of the transaction. The petitioner in his return for the taxable year 1946 reported the gain as a long-term capital gain taxable at 50 per cent thereof. The petitioner conceded at the trial that he should have reported the gain as taxable in 1945. He contends that the fraud penalty should not be imposed because his failure to report the gain in 1945 was due to an innocent mistake and error in judgment. He testified that at that particular time he was undergoing a terrific strain, his wife was dying by inches, that he was not using the same good judgment, and that he was angry about the nonpayment of $8,000 salary alleged to be due him from the Erie Casket Company. He also testified that the reason he reported the gain in 1946 was because he told Pattan he would not conclude the sale until he received the check for $8,000. The record shows that on January 17, 1946, the James L. Meldon Company received a check from the Erie Casket Company in payment for services rendered in 1945, as *147 itemized on an invoice dated November 30, 1945. The petitioner did not report an item of $8,000 as salary on his return for 1946. Since the petitioner concedes the capital gain was reportable in 1945 he has apparently abandoned his former contention that the $8,000 item had some connection with the Erie stock transaction. The testimony that the petitioner did not regard the resale to Pattan as having taken place until he received the $8,000 alleged salary appears to have been a mere gesture made for the purpose of giving color to his failure to report the gain for taxation in 1945. This record contains other evidence showing a lack of good faith and indicating that the omission from his income in 1945 of the gain with respect to the Erie stock transaction was deliberate and intentional. On March 15, 1946, the petitioner filed a declaration of estimated tax indicating a tax liability for 1946 of $4,895.91, and on September 13, 1946, he filed a revised declaration of estimated tax in the lesser amount of $4,590.65. Obviously, neither of these declarations embraced the conceded gain from the Erie stock transaction. On January 15, 1947, the petitioner filed an amended declaration *148 of estimated tax in the amount of $69,176.66 for the year 1946 which presumably included the gain on the Erie stock transaction. In this connection the record shows that the petitioner was for several years employed as an internal revenue agent and was later promoted to the position of Assistant Internal Revenue Agent in Charge at Pittsburgh, Pennsylvania. Since 1924 he has been engaged as an accountant and tax consultant, filing individual and corporate tax returns, and representing clients before the Bureau of Internal Revenue. Since about 1924 he has prepared tax returns for the Erie Casket Company and the individual returns for Pattan and members of the Pattan family. In 1946 the petitioner prepared the individual return of Pattan for the year 1945. In that return he did not report the Erie stock transaction with himself or the later sale of the Erie Casket Company to Walker in 1945. The petitioner's explanation for the omission was that Pattan had advised him that he had not recovered his cost. The unreality of the explanation is patent in the light of the evidence showing that on or about July 6, 1945, the petitioner prepared a calculation indicating that Pattan had realized *149 a profit in 1945 of $410,550.39 on the two transactions with petitioner and Walker respecting the Erie Casket Company. Pattan later employed an accountant and filed an amended return in December 1946, disclosing the aforementioned transactions. The petitioner had knowledge of the filing of the amended return by Pattan. We think it is not unreasonable to draw the inference that such knowledge had a bearing on the petitioner's determination to report the gain on the Erie stock transaction in 1946. The recital of the foregoing facts, coupled with the further circumstances that neither the petitioner nor Pattan maintained any book records of the transaction with petitioner, exchanged no release, and did not preserve the original documents evidencing the transaction, leads us to believe that the petitioner, at least, entertained the hope that the facts would never come to light. If such inference be not warranted, the conclusion is inescapable that petitioner was motivated by a purpose to report the profit as a long-term capital gain, whereas, if the gain had been reported in the proper year, it would have been taxable as a short-term capital gain. Furthermore, the record shows the *150 omission to report in 1945 interest income in the amount of $5,966.01. The petitioner's explanation for such omission is that he had an interest deduction in excess of the amount of interest received in that year. The record contains no evidence in support of the alleged interest deduction. The petitioner admitted that he was not contending that his method of treating the interest items was proper. With petitioner's extensive accounting experience in taxation matters it would be difficult to believe he could entertain an honest belief that he was filing a correct and proper return by treating items as "washouts" and failing to report them. After a most painstaking study of the record and after giving consideration to the many inconsistencies, to our observation of the petitioner as he testified, and to the inferences to be drawn from the evidence, we conclude that the respondent has carried the burden of establishing the necessary fraudulent intent. In arriving at this determination we have not given any consideration to the matters contained in exhibits X and Y, which were received in evidence over the objection of the petitioner. Accordingly, we hold that a part of the deficiency *151 for the taxable year 1945 was due to fraud with intent to evade tax. The imposition of the 50 per cent addition to the tax in 1945 for fraud is sustained. Decision will be entered under Rule 50.